IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        *Plaintiff,*<br><br>v.<br><br>1.604 ACRES OF LAND, MORE OR LESS,<br>SITUATE IN THE CITY OF NORFOLK,<br>COMMONWEALTH OF VIRGINIA, AND 515<br>GRANBY, LLC, et al.,<br>        *Defendants.* | CASE NO. 2:10-cv-00320<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon a Report and Recommendation ("R&R") in which United States Magistrate Judge B. Waugh Crigler recommends entry of an order finding that 515 Granby, LLC ("Granby") and Marathon Development Group, Inc. ("Marathon") (collectively, "Defendants") are entitled to an award of attorney's fees, costs, and other expenses that they incurred in the course of litigating the amount of just compensation to be paid in the federal government's condemnation of land in Norfolk, Virginia.[1] At bottom, the question presented is whether the government's overall position as to the value of that land was unreasonable. Finding that it was not, I decline to adopt the magistrate judge's R&R, and, for the reasons that follow, I will deny Defendants' underlying motions.

---

[1] Granby was the owner of the condemned property on which Marathon held a lien. At the time of the government's taking, Granby and Marathon had completed steps towards what ultimately proved to be an ill-fated attempt to develop the subject property into a multimillion-dollar condominium building called Granby Tower. The government named Granby as a defendant in its complaint, whereas Marathon was subsequently added as a defendant upon the government's motion.

# I. BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are undisputed. On July 1, 2010, under its powers of eminent domain and pursuant to the Declaration of Taking Act, 40 U.S.C. § 3114, the government condemned 1.604 acres of land for the purpose of constructing an annex to the federal courthouse in Norfolk.[2] The following day, after Granby rejected the government's offer to purchase the property for $6.175 million, the government deposited that amount with the Court as its estimation of just compensation for the land. This amount reflected the value of the land as estimated by an independent appraisal expert in 2009. The same appraiser had valued the land at $7 million in 2008.[3] Both of these pre-condemnation appraisals valued the property as if vacant, thus excluding, at the direction of the government, all positive or negative impacts of improvements that had been made to the property as a result of Defendants' efforts to develop it. Specifically, these improvements consisted of partial site preparations, including the installation of pilings, for a high-rise building. The property was valued at its highest and best use, which the appraiser considered to be as a site for a mixed-use, multi-story building.

Following the government's filing of its condemnation action, it obtained another appraisal of the property as of the date of taking, this time from a different independent appraisal expert, who valued the property "as is" at $9 million. In other words, this appraisal of July 2010 took into account the value of the aforementioned improvements. When the parties exchanged expert disclosures in December 2010, the government revealed $9 million as its estimation of the property's fair market value, and that amount became its litigation position as to the property's

---

[2] As a result of the conflict of interest that arose among the district court judges in the United States District Court for the Eastern District of Virginia when the government instituted this action, the Chief Judge of the United States Court of Appeals for the Fourth Circuit assigned me to preside over this case by order dated July 26, 2010.

[3] According to the appraiser, the 2009 appraisal was lower than the 2008 appraisal primarily as a result of the deepening economic recession that had overtaken the nation and its spillover effects on the real estate market.

value. However, according to Granby, the property was worth $36.1 million. As the parties prepared for trial, I granted several motions filed by the government in which it objected to Defendants' valuation methodology. By the time the trial commenced on May 18, 2011, Defendants' valuation position had dropped to $16.32 million, while the government's position remained $9 million. Ultimately, the jury awarded Defendants $13,401,741.00 in just compensation for the government's taking of the property.

On November 2, 2011, both Granby and Marathon moved for awards of attorney's fees, costs, and other expenses.[4] On January 12, 2012, I referred this issue to the magistrate judge. Thereafter, on February 9, 2012, the magistrate judge entered an order severing the issues relating to Defendants' claim of entitlement to fees, costs, and other expenses from the issues relating to the actual amount of fees, costs, and other expenses. In bifurcating the entitlement and amount issues, the magistrate judge dispensed with oral argument on the former. Subsequently, on March 26, 2012, the magistrate judge issued the aforementioned R&R. The government timely filed objections to the R&R, disputing the magistrate judge's conclusion that the government's position was not substantially justified as well as the magistrate judge's determination that there are not special circumstances that would make an award of fees unjust. Defendants oppose the arguments raised by the government in its objections and timely filed briefs in which they urge me to adopt the magistrate judge's R&R.

---

[4] Granby seeks a total award of $978,256.84, and Marathon seeks a total award of $48,003.04.

## II. STANDARD OF REVIEW

Upon the magistrate judge's issuance of an R&R, the parties are entitled to file specific written objections to the proposed findings and recommendations. 28 U.S.C § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).[5] Any part of the magistrate judge's R&R to which an objection has been properly lodged is to be reviewed *de novo* by the district court. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Upon review, the district court has broad discretion to accept, reject, or modify the magistrate judge's recommended disposition of the matter. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Camby*, 718 F.2d at 200.

## III. DISCUSSION

Under the so-called "American rule," the parties to civil litigation ordinarily bear their own attorney's fees and costs, unless there is explicit statutory authority to the contrary. *See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001). The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, pursuant to which Defendants claim entitlement to awards of attorney's fees, costs, and other expenses, stands as an exception to this rule for civil actions in which the United States is a party. *See E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 519 (4th Cir. 2012).

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special

---

[5] Ordinarily, such objections must be filed within fourteen days. *See* 28 U.S.C § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). However, I entered an order granting the parties' joint request to set forth an extended briefing schedule in order to permit them time to file objections (and responses to those objections) to the R&R.

circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).[6] In the instant case, the parties do not dispute that Defendants qualify as prevailing parties for purposes of the EAJA.[7] It is well-established that it is the government's burden to show that its position was substantially justified or that special circumstances exist that would make an award unjust. *E.E.O.C. v. Clay Printing Co.*, 13 F.3d 813, 815 (4th Cir. 1994). I first take up whether the government's position was substantially justified.

"The most difficult part of the EAJA, as it pertains to eminent domain cases, is the 'substantially justified' aspect." *United States v. 640.00 Acres of Land*, 756 F.2d 842, 849 (11th Cir. 1985); *see also United States v. Paisley*, 957 F.2d 1161, 1165 (4th Cir. 1992) ("Whether for purposes of the EAJA the Government's 'position' in particular litigation is 'substantially justified' has proved to be an issue of considerable conceptual and practical difficulty, given the open-endedness of the statutory language and, no doubt, the delicacy of the question."). Despite the fact that the EAJA does not define "substantial justification," the Supreme Court of the United States has stated that for a position to be substantially justified, it must be justifiable to a degree that would satisfy a reasonable person, and that it must be more than merely non-deserving of sanctions for frivolousness. *Pierce v. Underwood*, 487 U.S. 552, 565–66 (1988);

---

[6] The Fourth Circuit has described the purpose of this provision as follows:

> Congress designed the exceptions to the mandatory award of fees and expenses to prevailing parties as a safety valve that would insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of law that often underlie vigorous enforcement efforts and that would provide district courts with discretion to deny awards where equitable considerations dictate an award should not be made.

*Priestly v. Astrue*, 651 F.3d 410, 415 (4th Cir. 2011) (citation and internal quotation marks omitted).

[7] In eminent domain cases, "prevailing party" means

> a party who obtains a final judgment . . . the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government.

28 U.S.C. § 2412(d)(2)(H).

*accord Hess Mech. Corp. v. N.L.R.B.*, 112 F.3d 146, 149 (4th Cir. 1997) ("The test for substantial justification is one of reasonableness."). In order to determine whether the government's position was substantially justified in a given case, courts look to the underlying record, not simply the ultimate award. *See Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993).

"While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Comm'r Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 161–62 (1990). The United States Court of Appeals for the Fourth Circuit has interpreted *Jean* "as directing a more broadly focused analysis that would reject the view that *any* unreasonable position taken by the government in the course of litigation automatically opens the door to an EAJA fee award." *Roanoke River Basin*, 991 F.2d at 139. Accordingly, "when determining whether the government's position in a case is substantially justified," the Fourth Circuit instructs courts to "look beyond the issue on which the petitioner prevailed to determine, from the totality of the circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation." *Id.* In so doing, "it is appropriate to consider the reasonable overall objectives of the government and the extent to which the alleged governmental misconduct departed from them." *Id.* Clearing up any confusion that may have lingered following its decision in *Roanoke River Basin*, the Fourth Circuit has since confirmed that, under the EAJA, "[t]he 'position of the United States' includes both its pre-litigation conduct as well as its litigation position." *United States v. Lamson (Lamson I)*, No. 94-1249, 1995 WL 54025, at *3 (4th Cir. Feb. 10, 1995) (citations omitted).

"In the context of condemnation cases, the district court must determine whether the

6

government's refusal to offer more to the property owners as just compensation had a reasonable basis in fact and in law." *Id.* at *4. With respect to whether the government's position is substantially justified in the eminent domain context, the Fourth Circuit has held that

> the test . . . is for the district court to "focus upon the relationship between the government's offer, the appraisals, and the valuations established by the government's expert witness during trial, rather than the relationship between the government's offer or deposit and the property owners' counter offer, if any, or the jury award . . . ."

*United States v. 312.50 Acres of Land*, 851 F.2d 117, 118–19 (4th Cir. 1988) (quoting *United States v. 341.45 Acres of Land*, 751 F.2d 924, 940–41 (8th Cir. 1984) (footnotes omitted)). The Fourth Circuit has added that when "the government uses experienced, qualified, competent appraisers, and consistently relies on their valuations in its offers of compensation, without any evidence of bad faith on its part, the government's positions are substantially justified." *United States v. Lamson (Lamson II)*, No. 95-2770, 1996 WL 393171, at *2 (4th Cir. July 15, 1996).

Analyzing whether the government's position was substantially justified requires me to examine its position prior to commencement of litigation as well as afterward. *See Lamson I*, 1995 WL 54025, at *3. As previously mentioned, the government obtained two pre-condemnation appraisals from an independent expert in 2008 and 2009. The government directly based its pre-litigation position on these appraisals, and the 2009 appraisal of $6.175 million served as the basis of the amount the government paid into the Court when it initiated this action and took the property in July 2010. Significantly, the government instructed the pre-condemnation appraiser, Robert Coles, to appraise the property as if vacant. In other words, the government asked Mr. Coles not to take into account the value of improvements to the property made by Defendants. In the letter, dated March 19, 2009, which accompanies the appraisal, Mr. Coles states: "'Vacant' is somewhat misleading in that site improvements for the stalled Granby Tower development were under way when construction was stopped. However, we are

considering the property as if vacant in this analysis." Docket No. 271-2 at 2. And the appraisal report itself states:

> We have been asked to value the site as if vacant, however, and have not taken into consideration (nor have we received any information on the value of the site work completed today to our client, or, for that matter, to a market buyer) any contribution of the completed site work to date.

*Id.* at 4. Mr. Coles described the lack of consideration given to the site preparation costs at the request of the government as an "extraordinary assumption," which is a term of art for an assumption that, if found to be false, could alter the resulting conclusion. *See The Dictionary of Real Estate Appraisal* 106 (4th ed. 2002).

The parties do not dispute the fact that Mr. Coles was experienced and qualified; however, Defendants maintain that the government's pre-litigation position was not substantially justified because it was directly based upon an appraisal that inaccurately assessed the fair market value of the subject property as a result of the government's unreasonable instructions not to take into account the value of the site preparations for which Defendants had paid. I agree. The government contends that in instructing the appraiser as described, it did not act in bad faith, but in so arguing, the government confuses the applicable standard for the purpose of Defendants' entitlement to fees. *See, e.g.*, *Maritime Mgmt., Inc. v. United States*, 242 F.3d 1326, 1332 n.8 (11th Cir. 2001) ("Bad faith is generally considered to be a higher standard than substantial justification, in the context of the EAJA.") (citations omitted). Whether the government possessed such ill will or dishonesty of purpose as to have acted in bad faith is not the relevant inquiry; rather, the EAJA requires me to discern whether the government's position with respect to the value of the property was substantially justified. And, as I have described, that question is one of objective reasonableness. *See Hess*, 112 F.3d at 149. I conclude that, by instructing the appraiser not to include the value of the improvements that had been made to the

land, the government did not act reasonably. Indeed, the government's decision to do so precluded the appraiser from acting independently and may very well have resulted in an underestimation of the property's fair market value.[8] The law is clear that "[n]o owner shall be required to surrender possession of real property before the head of the Federal agency concerned . . . deposits with the court . . . , for the benefit of the owner, an amount not less than the agency's approved appraisal of the fair market value of such property . . . ." 42 U.S.C. § 4651(4). Because the amount that the government paid into Court was based on these pre-condemnation appraisals, its pre-litigation position was necessarily tied directly to its conduct in directing the appraiser as described. Accordingly, the government's pre-litigation position was not substantially justified.[9]

However, my analysis does not end there, for the "totality of the circumstances" inquiry prescribed by the Fourth Circuit also requires that I consider the government's litigation position. *See Lamson I*, 1995 WL 54025, at *3. The government's litigation position, which was based on an appraisal performed in July 2010 by Michael Rountrey, was that the property was worth $9 million dollars. As previously described, this valuation became the government's litigation position when it was disclosed to Defendants in December 2010. The parties do not dispute that Mr. Rountrey was an experienced, qualified, and competent appraiser as required. *See Lamson*

---

[8] Between March 2009 and July 2010, the property's appraised value rose nearly 50% from $6.175 million to $9 million. Notwithstanding the fact that these two estimates were produced by different appraisers, and regardless of any potential market price fluctuations that may have occurred, it is clear to me that the difference in the two valuations is primarily attributable to the 2010 appraisal's valuation of the improvements to the land as being worth $2 million. The government's contention that these same improvements might, in 2008 and 2009, have actually detracted from the value of the property is tenuously reasoned and necessarily unsubstantiated.

[9] The fact that the appraiser also ignored the effects of mechanic's liens and back taxes associated with the property does not vitiate or counteract the unreasonableness of the government's instruction to ignore the improvements to the land. Although the appraisal describes the lack of consideration of these financial obligations as an additional extraordinary assumption, the task before me is not to assess the government's pre-litigation position by parsing the various assumptions built into its pre-condemnation appraisals, but rather to test that position for reasonableness in the aggregate. It is my conclusion that, by directing Mr. Coles not to build into his appraisal the value of the site preparations, the government "poisoned the well" with respect to its pre-litigation position, other assumptions notwithstanding.

*II*, 1996 WL 393171, at *2. While Defendants' briefs before the magistrate judge suggested that Mr. Rountrey's appraisal was deficient in that it relied on data from outside the market area in offering evidence of comparable sales, I concur with the magistrate judge's conclusion that Defendants' suggestion is unpersuasive in light of the fact that they never sought to exclude the evidence of comparable sales utilized by Mr. Rountrey in his estimation of the property's fair market value.[10]

Separately, while the government's litigation position of $9 million was concededly quite far below the Defendants' initial litigation position of $36.1 million, the government's subsequent motions practice succeeded in causing Defendants to lower their position, thus lending credence to the reasonableness of the government's stance that the property was worth $9 million. Ultimately, the government acted rationally by relying on Mr. Rountrey's appraisal in order to establish its litigation position, which, I add, it consistently maintained from December 2010 through trial in May 2011. Therefore, I find that the government's litigation position was substantially justified.

It is at this point in my analysis that the difficulty inherent in applying the EAJA's substantial justification standard comes to bear. When, as here, a district court is faced with determining whether the government's overall position was substantially justified under the totality of the circumstances, and yet the government's pre-litigation and litigation positions point in opposite directions, the court must also contend with a paucity of relevant case law instructing it how to proceed. To the extent a court finds that the government's pre-litigation position in a given case was not substantially justified, it is not abundantly clear whether that fact necessarily means that the court must find the government's overall position to be similarly

---

[10] Mr. Rountrey explained in his appraisal that he included comparable sale information from non-adjacent properties and properties outside of Norfolk's central business district because of the scarcity of recent land sales in that area that were suitable for large-scale, mixed-use development.

unjustified. *See, e.g.*, *Baldi Bros. Constructors v. United States*, 52 Fed. Cl. 78, 82 (Fed. Cl. 2002) ("[I]n appropriate circumstances, the court would not be disinclined to find that the Government's position during litigation outweighed its prelitigation conduct so as to support a finding that it acted with substantial justification.") (citations omitted); *but cf. Cervantez v. Sullivan*, 739 F. Supp. 517, 521 (E.D. Cal. 1990) ("A finding that either the government's underlying conduct which gave rise to the litigation or its litigation position was not substantially justified is sufficient to support an award of EAJA fees.") (citations omitted).

In *Herring v. United States*, 781 F.2d 119, 122 (8th Cir. 1986), the United States Court of Appeals for the Eight Circuit affirmed the magistrate judge's conclusion that the government's overall position was not substantially justified. Even though the magistrate judge found that the government's litigation position was reasonable, it determined that the government's pre-litigation position was unreasonable. *Id.* In the end, the Eight Circuit could not conclude that the district court had abused its discretion in finding, upon consideration of the totality of the circumstances, that the government's position was not substantially justified. *Id.* With respect to this issue, the Fourth Circuit has expounded as follows:

> Thus a more egregious example of misconduct might, even if confined to a narrow but important issue, taint the government's "position" in the entire case as unreasonable, whereas a totally insupportable and clearly unreasonable position by the government on an inconsequential aspect of the litigation might not. Similarly, a broader government position that, considered in a vacuum, would not be clearly egregious might still, in the overall context of the case, constitute an unreasonable position because of its impact. Although an unreasonable stance taken on a single issue may thus undermine the substantial justification of the government's position, that question can be answered only by looking to the stance's effect on the entire civil action.

*Roanoke River Basin*, 991 F.2d at 139.

Ultimately, the foregoing cases lead me to conclude that, at least in the Fourth Circuit, there is no precise manner by which to weigh the government's pre-litigation and litigation

positions. Rather, I must step back and assess the government's overall position for reasonableness under the totality of the circumstances.

At this stage, it is useful to consider the overriding purpose of the EAJA and, correspondingly, whether the Act contemplates an award of fees in a case such as the one before me. Fundamentally, "the EAJA's primary purpose is to eliminate legal expense *as a barrier to challenges of unreasonable governmental action.*" *Ellis v. United States*, 711 F.2d 1571, 1576 (Fed. Cir. 1983) (emphasis added) (citing *Goldhaber v. Foley*, 698 F.2d 193, 196–97 (3d Cir. 1983)). In this vein, Congress included the "substantial justification" exception to the EAJA's partial waiver of the federal government's sovereign immunity as a means of balancing "the constitutional obligation of the executive branch to see that the laws are faithfully executed against the public interest in encouraging parties to vindicate their rights." H.R. Rep. No. 96-1418, at 10 (1980). Plainly, Congress wished to incentivize litigation by private entities seeking to obtain relief from the federal government in circumstances in which they otherwise might not file suit because of the government's "advantages inherent in its position of unlimited financial resources and its capacity for intransigence." *640.00 Acres of Land*, 756 F.2d at 850.

In the case at hand, Defendants cannot seriously maintain that they were relying on the EAJA to remove a barrier to their challenge of the government's valuation of their land. Similarly, the notion that the government's position, whether litigation or pre-litigation, forced Defendants to go to trial in order to vindicate their rights is fallacious. Notwithstanding the government's unreasonable position prior to the commencement of litigation, Defendants' revelation in December 2010 that they valued the property at $36.1 million clearly indicates that they were going to pursue litigation in order to obtain more money from the government for the condemnation of their property. Indeed, at the same time Defendants represented their position

as being $36.1 million, the government represented its new, litigation position to be $9 million, and yet Defendants continued to hold out and proceed towards trial. Of course, they had the unquestionable right to do so. But the issue before me is whether Defendants are entitled to recoup the financial costs of that decision, and answering that question requires me to consider, as a backdrop, the EAJA's primary purpose of rewarding those private entities that proceed to trial in spite of an unreasonable position put forth by the government. In this case, it simply stretches reason for Defendants to maintain that the government's pre-litigation position (or, for that matter, the government's litigation position) forced them to trial. Defendants went to trial because they believed the property was worth more than the government thought it was worth, and because they wished to obtain more than the government would offer. To be sure, that was their prerogative—one that, after its invocation, proved fruitful in light of the jury's award—but they are only entitled to receive fees in contradiction of the American rule if the government's valuation position was unreasonable.

In *Lamson I*, the Fourth Circuit instructed that, in assessing entitlement to fees under the EAJA in the context of eminent domain, "the district court must determine whether the government's refusal to offer more to the property owners as just compensation had a reasonable basis in fact and in law." 1995 WL 54025, at *4. Ultimately, after carefully considering the underlying record, I find that the government has shown that its decision not to offer more did have such a reasonable basis, and that its overall stance in this case was substantially justified. True, the government may have played fast and loose in instructing the pre-condemnation appraiser not to include the value of the improvements to the property, and it has not offered a satisfactory explanation for having directed him to do so. However, that earlier, lower valuation was not the government's litigation position, which, as I have explained, was highly reasonable.

When considered under the totality of the circumstances, I conclude that the government's overall position was substantially justified.

Having found the government's position to have been substantially justified, it is unnecessary to resolve whether there are any other special circumstances that would make an award of fees, costs, and other expenses unjust.

### IV. CONCLUSION

For the foregoing reasons, I decline to adopt the magistrate judge's R&R. Additionally, this case need not be recommitted to the magistrate judge, for an order shall issue denying Defendants' motions for awards of attorney's fees, costs, and other expenses. All other outstanding motions shall be denied as moot.[11]

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this _____ day of July, 2012.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[11] On June 7, 2012, the government simultaneously filed a reply brief in support of its objections to the R&R and a motion for leave to file that brief. On June 15, 2012, Granby simultaneously filed a brief in opposition to the government's motion as well as its own motion to strike the government's reply brief from the docket. Finally, on June 21, 2012, the government filed a motion for leave to amend its reply brief to include an inadvertently omitted exhibit. I did not consider the contents of the briefs associated with these motions in deciding whether to adopt the magistrate judge's R&R. In light of my ruling in this memorandum opinion, and because these motions have been rendered irrelevant, they are properly denied as moot.